UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBORAH L. HATTON ,                   Case No. 16-14463

      Plaintiff,                      Terrence G. Berg
      v.                              United States District Judge

COMMISSIONER OF SOCIAL            Stephanie Dawkins Davis
SECURITY,                         United States Magistrate Judge

      Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 17, 19)**

## I.    PROCEDURAL HISTORY

    A.    <u>Proceedings in this Court</u>

On December 27, 2016, plaintiff Deborah Hatton filed the instant suit.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Terrence G. Berg referred this matter to the undersigned for the purpose of reviewing the Commissioner's unfavorable decision denying plaintiff's claim for period of disability and disability insurance benefits.  (Dkt. 4).  This matter is before the Court on cross-motions for summary judgment.  (Dkt. 17, 19).

B.    Administrative Proceedings

Plaintiff filed the instant claim for period of disability and disability

insurance benefits on February 25, 2014.  (Tr. 15).[1]  The claim was initially

disapproved by the Commissioner on May 12, 2014.  (*Id.*).  Plaintiff requested a

hearing and on December 8, 2015, plaintiff appeared with counsel before

Administrative Law Judge ("ALJ") Timothy C. Scallen, who considered the case

de novo.  (*Id.*).  In a decision dated January 6, 2016, the ALJ found that plaintiff

was not disabled.  (Tr. 23).  Plaintiff requested a review of this decision.  (Tr. 11).

The ALJ's decision became the final decision of the Commissioner when the

Appeals Council, on November 4, 2016, denied plaintiff's request for review.  (Tr.

1); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, and that defendant's

motion for summary judgment be **GRANTED**, and that the findings of the

Commissioner be **AFFIRMED**.

II.    **ALJ'S FINDINGS**

Plaintiff, born in 1952, was 59 years of age on the alleged disability onset

date.  (Tr. 21).  Plaintiff has past relevant work as a cleaner and auto body

---

[1] The Administrative Record can be found at Dkt. 12.  References to its contents are denoted throughout this Report and Recommendation as "Tr." followed by the page number found in the lower right corner of the record.

estimator.  (Tr. 21).  The ALJ applied the five-step analysis and found at step one that plaintiff had not engaged in substantial gainful activity since September 1, 2012, the alleged onset date.  (Tr. 17).  At step two, the ALJ found that plaintiff's hyperopia and vitreous floaters were "severe" within the meaning of the second sequential step.  (*Id.*).  However, at step three, the ALJ found no evidence that plaintiff's impairments either singly or in combination met or medically equaled one of the listings in the regulations.  (Tr. 19).

Thereafter, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: no climbing of ropes, ladders or scaffolds; no exposure to unprotected heights and moving machinery; and no work requiring fine visual acuity jobs.

(Tr. 19).  At step four, the ALJ found that plaintiff was unable to perform any past relevant work.  (Tr. 21).  At step five, the ALJ denied plaintiff benefits because he found that there were jobs that exist in significant numbers in the national economy that plaintiff could perform.  (Tr. 21).

## III.   DISCUSSION

A.   <u>Standard of Review</u>

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case

4

de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in

the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508

(6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

    B.    <u>Governing Law</u>

    The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or

which has lasted or can be expected to last for a
continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without further
> analysis.
>
> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.
>
> Step Four:  If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.
>
> Step Five: Even if the claimant is unable to perform his
> or her past relevant work, if other work exists in the
> national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    Analysis and Conclusions

      1.    Step Two

           a.    Parties' Arguments

Plaintiff argues that the ALJ erred in finding that her COPD and heart palpitations were not severe impairments. "An individual's symptoms may cause limitations and restrictions in functioning which, when considered at Step 2, may require a finding that there is a 'severe' impairment(s) and a decision to proceed to the next step of sequential evaluation." (*Id.*) (quoting SSR 96-3p). A severe impairment is one that significantly impairs your ability to do basic work activities, and "significantly" is to be liberally construed in the claimant's favor. (*Id.* at p. 10) (citing *Griffeth v. Comm'r of Soc. Sec.,* 217 Fed. Appx. 425, 428 (6th Cir. 2007).

Plaintiff contends that medical evidence in the record supports her argument. For instance, in March 2014, she reported heart palpitations. (Tr. 325). Her treating physician, Dr. Goldman stated that plaintiff had heart damage and had developed heart palpitations after taking a diet drug years ago. (Tr. 330). She also had a consultation with a cardiologist in August 2014 whose records noted that plaintiff reported experiencing heart palpitations daily that were associated with dizziness, lightheadedness, and shortness of breath. (Tr. 335). Plaintiff testified that she experiences shortness of breath (Tr. 42), and there are mentions of

shortness of breath in the record.  (Tr. 362, 386).  When the heart palpitations

occur, plaintiff stated that she needs to sit down and that she experiences dizziness

during these events.  (Tr. 42).  In September 2015, plaintiff was diagnosed with

COPD.  (Tr. 387).  Further, any type of activity exacerbates plaintiff's shortness of

breath.  Plaintiff contends that this evidence establishes that her heart palpitations

and COPD cause a significant impairment in her ability to do work activities.

Therefore, she maintains that the ALJ's Step Two decision is improper and not

harmless.

Plaintiff next argues that even if the ALJ did not err in concluding that

plaintiff's COPD and heart palpitations are not severe impairments, he still erred in

failing to consider all of her impairments, severe and non-severe, throughout the

sequential review process.  Plaintiff contends that the ALJ is required to consider

the limiting effects of all impairments but failed to do so throughout the remainder

of his analysis, and more particularly in steps four and five.  This error is harmful

because, according to plaintiff, including limitations brought on by those

impairments would render plaintiff disabled pursuant to Medical Vocational Rules

202.04 and 202.06.  (*Id.* at p. 11-12).

The Commissioner responds that substantial evidence supports the ALJ's

determination that plaintiff's heart palpitations and COPD did not constitute

medically determinable impairments.  There is not sufficient medical evidence to support a finding that those impairments are severe or medically determinable. The evidence from March 2014 indicates that plaintiff complained of heart palpitations due to a reported history to exposure of the diet drug fen/phen.  Dr. Goldman noted, based on plaintiff's description, that her palpitations "sounded like" atrial fibrillation, which "could" cause a stroke.  (Tr. 325, 330).  Dr. Goldman advised plaintiff to seek better health insurance to obtain treatment to prevent a stroke in the future because she was at risk.  A short systolic murmur was noted by history/review, but it was also noted that there was no rub, that there was a normal S1 and S2, and that there was no S3.  (Tr. 325).  In August 2014, she again complained of heart palpitations, which she said had been present for five years and resulted in dizziness and shortness of breath.  (Tr. 335).  However, her examination showed normal rhythm and rate and there were no obvious murmurs. (Tr. 336).  A "21-day wireless event monitor" running from August through September 2014, showed no evidence of atrial fibrillation or atrial flutter.  (Tr. 337).  There were no ST segment shifts or significant pauses noted during the testing period, and plaintiff did not experience any symptoms (which would seem inconsistent with her allegation that she felt palpitations daily at that time). Further, her stress test indicated a fair exercise tolerance.  (Tr. 338).

The Commissioner argues that likewise, the medical evidence pertaining to cough or COPD does not support plaintiff's claims.  Examinations between 2013 and 2015 showed normal lung functioning, and in March 2015 plaintiff denied experiencing any shortness of breath.  (Tr. 347).  The Commissioner contends that the mere diagnosis of COPD does not establish the severity of the condition. (citing *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)).  The Commissioner further posits that the diagnosis may have been made out of an abundance of caution.  (Dkt. 19, at p. 8).  Dr. Lee noted that plaintiff had decreased breath sounds with some soft wheezes, but she had no rhonchi wheezes or crackles, and her cardiovascular exam was otherwise normal, as was her chest x-ray.  (Tr. 387). Indeed, Dr. Lee noted that the x-ray had revealed "no evidence of hyperinflation" but that plaintiff "likely" had a component of both chronic and asthmatic bronchitis.  (Tr. 387).  Dr. Lee emphasized the critical importance of complete cessation of smoking.  (Tr. 387).  According to the Commissioner, this evidence is insufficient to support a finding of a medically determinable impairment.  (Dkt. 19, at p. 8) (citing *Landsaw v. Sec'y of Health & Human Servs*., 803 F.2d 211, 213-214 (6th Cir. 1986) (a diagnosis unaccompanied by supporting clinical data is insufficient to support a finding of a severe impairment)).  The Commissioner maintains that a medically determinable impairment cannot be established based on plaintiff's subjective complaints alone and that the medical evidence in the

record does not provide substantial evidence that her heart palpitations and COPD are medically determinable impairments. (*Id.*).

  b. Analysis

  The ALJ found that amongst plaintiff's claimed ailments, COPD and heart palpitations were not medically determinable impairments at Step Two of the sequential disability analysis. (Tr. 18*).* Under the Regulations, the ALJ must consider whether a claimant's impairment is a medically determinable impairment at Step Two. *See* 20 C.F.R. § 404.1520. A medically determinable impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities, which can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Jones v. Comm'r of Soc. Sec.*, 2017 WL 540923, at *6 (S.D. Ohio Feb. 10, 2017), *report and recommendation adopted sub nom. Jones v. Berryhill*, 2017 WL 1196179 (S.D. Ohio Mar. 31, 2017) (citing 20 C.F.R. §§ 404.1505, 404.1508, 404.1520(a)(4)(ii) and 404.1527(a)(1)). "Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source. We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)." 20 C.F.R. § 404.1521; *see also Tolbert v. Comm'r of Soc. Sec.*, 2012 WL 4176876, at *4 (E.D. Mich. Aug. 27, 2012), *report and recommendation adopted*, 2012 WL 4165649 (E.D. Mich. Sept. 18, 2012) (citing Social Security Ruling 96–4p, 1996

WL 374187 at *1) ("A diagnosis establishes medically determinable impairment only where it is supported by objective medical evidence."). There is no error in failing to consider non-medically determinable impairments throughout the sequential analysis. *See Jones*, 2017 WL 540923, at *6 ("If an alleged impairment is not medically determinable, an ALJ need not consider that impairment in assessing the RFC.") (citing *Rouse v. Comm'r of Soc. Sec.*, 2017 WL 163384, at *4 (S.D. Ohio Jan. 17, 2017) (stating that a "claimed condition which is not 'medically determinable' need not be considered at all" in determining a claimant's RFC)); *see also* 20 C.F.R. §§ 404.1527(a)(1), 404.1545(a)(2).

Also at step two of the sequential evaluation process, the ALJ must consider whether a claimant's medically determinable impairment is a severe impairment and whether the impairment(s) meet the twelve month durational requirement in 20 C.F.R. § 404.1509. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 188 (6th Cir. 2009) ("At step two, if a claimant does not have a severe medically determinable physical or mental impairment . . . that meets the durational requirement in § 404.1509 . . . , or a combination of impairments that is severe and meets the durational requirement, then [she] is not disabled."). The applicant bears the burden of establishing the existence within the administrative record of objective medical evidence suggesting that the applicant was "disabled" as defined by the Act. In order to be

classified as severe, an impairment or combination of impairments must significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Basic work activities, defined in the regulations as "the abilities and aptitudes necessary to do most jobs," include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in routine work settings.

Failure to find an impairment severe at step two of the sequential analysis is not reversible error if the ALJ found another impairment severe and thus continued with the five-step evaluation. *See e.g.*, *Fisk v. Astrue*, 253 Fed. Appx. 580, 584 (6th Cir. 2007); *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008). If the ALJ continues with the remaining steps, any error at step two is harmless, so long as the ALJ considered the effects of all medically determinable impairments, including those deemed non-severe. *See e.g.*, *Cobb v. Colvin*, 2013 WL 1767938 at *4 (D. Kan. Apr. 24, 2013) ("The Commissioner is correct that the failure to find that additional impairments are severe is not in itself cause for reversal. But this is true only so long as the ALJ considers the effects of all of the claimant's medically determinable impairments, both those he deems severe and those not severe.")

(internal quotation marks omitted); *Jackson v. Astrue*, 734 F. Supp. 2d 1343, 1361 (N.D. Ga. 2010) (Where ALJ identified one severe impairment at step two, the failure to identify additional severe impairments at step two was harmless error in child disability case where the ALJ considered all of the plaintiff's impairments at other steps as demonstrated by discussion of testimony and medical history.).

Here, the ALJ found two impairments to be severe: hyperopia and vitreous floaters, and continued with the sequential analysis. The ALJ did not find plaintiff's COPD and heart palpitations to be severe impairments. (Tr. 18-19). In this regard, the ALJ's decision was consistent with the reviewing physician, Dr. Langham's assessment which found the two conditions to be non-severe and assigned no resultant limitations. (Tr. 74). Instead of finding them non-severe however, the ALJ determined that these claimed impairments are not medically determinable impairments. The Sixth Circuit applies a *de minimis* standard to determine whether an ailment even crosses the threshold to be considered a nonservere impairment. The principle aim of its application is to "screen out those claims that are 'totally groundless' solely from a medical standpoint." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (citation omitted). Regardless of whether plaintiff's claims of COPD and heart palpitations met the *de minimus* standard, as noted - the ALJ deemed other impairments severe, proceeded through the sequential disability analysis, and nevertheless considered symptoms associated

with these conditions in fashioning the RFC.  (Tr. 20).  Thus, even if the Court

were to find this determination somehow erroneous, for the reasons explained

more fully below, remand is not warranted.

  The undersigned concludes that since the RFC is supported by substantial

evidence—and there is no credible evidence of functional limitations greater than

those assessed in the RFC caused by COPD or heart palpitations—any error here is

harmless.  Consequently, even if the ALJ were to have determined that plaintiff's

COPD and heart palpitations were medically determinable but nonsevere

impairments, remand for further analysis would be futile.  This conclusion is

consistent with the court's holding in *Rouse v. Comm'r of Soc. Sec.*, 2017 WL

163384, at *4 (S.D. Ohio Jan. 17, 2017), where the ALJ failed to distinguish within

a list of impairments between which impairments were medically determinable but

nonsevere and which were not medically determinable.  The plaintiff argued that

because it was not possible to tell which impairments the ALJ placed in each

category, it was impossible to know if he properly considered the nonsevere

impairments throughout the sequential analysis.  *Id.*  The court said that even if, on

remand, the ALJ determined that all of the listed impairments were medically

determinable but nonsevere, the pertinent question would then be whether the

failure to include limitations from those impairments is supported by substantial

evidence.  *Id.* at *5 (citing *Rose v. Comm'r of Soc. Sec.*, 2015 WL 6735313, *5

(S.D. Ohio Nov. 4, 2015), *adopted and affirmed*, 2015 WL 7779300 (S.D. Ohio Dec. 2, 2015).  The court held that where the plaintiff did not identify any limitations from those impairments and it was not apparent from the record that any exist, the ALJ's error was harmless.  *Id.*  Thus, the court stated that ordering a remand for clarification of that question when the ALJ's RFC would not change "would be an exercise in futility," and found that, while error occurred, it did not justify remand.

Likewise, here, even if the ALJ had determined that plaintiff's COPD and heart palpitations were medically determinable yet nonsevere impairments, the RFC would not change because, as discussed more fully below, the record does not contain credible evidence of any functional limitations caused by those impairments.  *See Easterday v. Comm'r of Soc. Sec.*, 2016 WL 5422101, at *8 (E.D. Mich. Aug. 19, 2016) (finding no reversible error in ALJ's decision that diagnosed depression was not a medically determinable impairment because the "existence of a diagnosis [did] not suggest functional limitations.  Indeed, plaintiff bears the burden of proof at step two and has not come forward with any evidence of mental impairment that is more than a 'slight abnormality that minimally affects work ability regardless of age, education, and experience.'") (citing *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)); *see also Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213-214 (6th Cir. 1986) (a diagnosis unaccompanied

by supporting clinical data is insufficient to support a finding of a severe

impairment).  Consequently, the undersigned finds that, irrespective of the claimed

error at Step Two, remand is not warranted.

        2.     RFC

           a.    Parties' Arguments

Plaintiff argues that the RFC is inaccurate and therefore the ALJ erroneously

found work at Step Five.  (Dkt. 17, at p. 12).  Plaintiff contends that the RFC is not

supported by substantial evidence because it fails to include the entirety of her

claimed limitations, specifically her inability to stand/walk for extended periods

caused by her COPD and heart palpitations, and fatigue causing lack of

concentration.  (*Id.* at p. 13).  If these limitations were accounted for, plaintiff avers

that she would be limited to light unskilled work which would direct a finding of

"disabled" according to Medical Vocational Rule 202.04 or 202.06 or sedentary

work and be found disabled by Medical Vocational Rule 201.12 or 201.14.  (*Id.*).

Further, plaintiff claims that it does not follow that a 59 year-old woman could

perform the exertional demands of work at any level.  (*Id.*).

The Commissioner argues that substantial evidence supports the ALJ's RFC

determination.  (Dkt. 19, at p. 9).  According to the Commissioner, there is no

evidence that plaintiff's heart palpitations and COPD cause greater functional

limitations than those found by the ALJ.  (*Id.*).  Thus, even if the ALJ erred in

finding that plaintiff's heart palpitations and COPD were not medically determinable impairments, any such error would be harmless.  (*Id.*).

The Commissioner highlights the fact that a State Agency physician, Dr. Langham, reviewed the record and determined that the record evidence did not support the severity of plaintiff's allegations.  He also did not find any severe medically determinable impairments or RFC limitations relating to plaintiff's claimed symptoms.  (*Id.*; Tr. 74).  In fact, there are no medical opinions in the record assessing any functional limitations, even though the ALJ did include some limitations in his RFC assessment.  (Dkt. 19, at p. 10).  The Commissioner also points out that the ALJ considered plaintiff's allegations of "racing heart with dizziness" and "shortness of breath with any activity" when assessing the RFC. (*Id.*; Tr. 20).  The Commissioner notes further support for the RFC in plaintiff's activities of daily living, which include caring for pets, performing self-care without a problem, preparing simple/small meals, performing light household chores, driving, and shopping.  (Dkt. 19, at p. 10; Tr. 20).  The Commissioner contends that it was plaintiff's burden to prove the extent of her impairments and limitations, but she has failed to show she was more limited than the ALJ found. (Dkt. 19, at p. 11).

Finally, the Commissioner argues that plaintiff is incorrect when she says the Medical-Vocational Rules would direct a finding of disabled based on her age

and gender.  (*Id.* at p. 12).  Someone who is even "closely approaching retirement age" is not automatically disabled under the medium table in the GRID.  (*Id.*; 20 C.F.R. Part 404, Subpart P, Appendix 2 (table 3)).  Indeed, someone who is either "closely approaching retirement age" or of "advanced age," who has at least a high school education, as plaintiff does (Tr. 21, 36), is not disabled under the medium GRID.  (*Id.*, rules 203.06-203.09 and 203.14- 203.17).

b.      Analysis

The ALJ's RFC decision is supported by substantial evidence.  The record does not contain evidence of any functional limitations for standing or walking related to COPD, heart palpitations, or otherwise; nor does it substantiate any limitations from fatigue causing lack of concentration.  In the September 2015 report in which Dr. Lee diagnosed plaintiff with COPD, he did not note any limitations caused by the COPD or identify any medical findings that would cause functional limitations.  (*See* Tr. 387-390).  Plaintiff's heart palpitations have been present for years, but she now claims she has them every day.  (Tr. 42, 72).  When she has an episode of palpitations she feels like she is going to pass out, (Tr. 325), but these episodes last only 10-30 seconds.  (Tr. 42, 335).  Although there are medical records reporting a history of heart palpitations, objective findings do not support any limitations associated with this complaint.  Indeed, the medical record documents a 21-day wireless event monitor running from August 24, 2014 through

22

September 13, 2014 which showed predominantly normal sinus rhythm, no

evidence of atrial fibrillation or atrial flutter, no evidence of supraventricular

tachycardia, no evidence of ventricular tachycardia, no ST segment shifts, and no

significant pauses, (Tr. 337).  Further, in other parts of the record plaintiff's heart

rate and rhythm were noted to be "regular."  (Tr. 345, 347, 387).  Moreover, the

Adult Exercise Echocardiography conducted in August of 2014 demonstrated "a

fair exercise tolerance for her age."  (Tr. 338).  No health care provider assessed

functional limitations as a result of her heart palpitations.  In fact, a treating

physician at My Care Health Center noted in December 2013 that plaintiff walks

up and down the stairs about 20 times a day, and suggested to her that she

gradually increase the number of trips up and down the stairs each week to

increase exercise capacity.  (Tr. 328).

Plaintiff's evidence of limitations appears to derive wholly from her

subjective complaints.  (Tr. 21).  As discussed above, plaintiff's claimed

limitations simply are not borne out by the objective medical testing and review of

plaintiff's daily activities.  Consequently, the ALJ found plaintiff's testimony on

the intensity, persistence, and limiting effects of the symptoms of her medically

determinable impairments not fully credible to the extent they are inconsistent with

the RFC.  (Tr. 20-21).  Plaintiff does not contest the ALJ's credibility

determination.

Notwithstanding the absence of medical evidence from any treating or examining physician establishing any further functional impairments, the ALJ gave plaintiff a "generous benefit of the doubt" and took her alleged symptoms and limitations into account in the RFC determination.  (Tr. 21).  In light of the dearth of medical evidence showing no functional limitations, along with the ALJ's inclusion of some functional limitations, such as no climbing ropes, ladders or scaffolding and no exposure to unprotected heights and moving machinery – both of which could be impacted by unexpected bouts of racing heart, dizziness and/or shortness of breath which plaintiff associated with her heart palpitations and COPD – the RFC is supported by substantial evidence.

Plaintiff's additional argument that it does not follow that a 59-year-old could perform the exertional demands of work at any level is not well-taken.  SSR 96-9p states that the RFC "does not consider limitations or restrictions due to age or body habitus, since the Act requires that an individual's inability to work must result from the individual's physical or mental impairment(s)."  1996 WL 374185, at *2.  Thus, the mere fact that plaintiff was 59 years old at the alleged onset date does not mean she was disabled.

Because there is no credible evidence in the record of limitations as to walking, standing, or lack of concentration, the ALJ did not err by not including any.  The RFC encompasses "the claimant's residual abilities or what a claimant

24

can do, not what maladies a claimant suffers from-though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.,* 276 F.3d 235, 240 (6th Cir. 2002). "Thus, the mere existence of any condition from which plaintiff may have suffered does not necessarily establish any functional limitation or disability." *Ervin v. Comm'r of Soc. Sec.*, 2012 WL 4378424, at *9 (E.D. Mich. Aug. 30, 2012). For the foregoing reasons, the undersigned finds no basis to upset the ALJ's RFC determination.

Finally, the ALJ's Step Five determination is supported by substantial evidence. Because the hypothetical question to the vocational expert restates the RFC, (Tr. 64-65), and because, as discussed above, the RFC accurately portrays plaintiff's limitations, there is no error at Step Five.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, and that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 14, 2018                    s/Stephanie Dawkins Davis
                                           Stephanie Dawkins Davis
                                           United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 14, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

s/Tammy Hallwood
Case Manager
(810) 341-7850
tammy_hallwood@mied.uscourts.gov